-UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: GREGORY JAMES WEAVER and
MARY JANINE WEAVER,

No. 13-10-12204 JA

Debtors.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the First Application by Attorneys for the Debtors for Allowance and Payment of Compensation and Reimbursement of Expenses and Costs ("Fee Application") filed by William F. Davis & Associates, P.C. (the "Law Firm"), counsel for the Debtors. The Fee Application seeks approval of $8,508.95 for the period from March 9, 2009 through August 6, 2010 consisting of 7,547.00 in attorneys' fees, $505.09 in associated taxes, and $456.86 in expenses. The Chapter 13 Trustee filed an objection to the Fee Application asserting, among other things, that the requested fees were excessive under the facts and circumstance of the case, that some of the charges were for clerical or other standard office tasks, that the charges incurred in preparing the Fee Application were excessive, that the hourly rate charged by Johnathan Peek is too high, and that allowance of the Fee Application in full will render the Debtors' confirmed plan unfeasible.[1] *See* Docket No. 44.

The Court held a final, evidentiary hearing on the Fee Application on January 7, 2011, and took the matter under advisement. After considering the evidence presented at the final hearing, reviewing the Fee Application, and being otherwise sufficiently informed, the Court finds that some of the requested fees must be disallowed. Accordingly the Court will grant, in part, and deny, in part the pending Fee Application.

---

[1] At the final hearing, the Chapter 13 Trustee stated that while feasibility would not likely be an issue, given the fact that the Debtors have agreed to contribute tax refunds to the plan for tax years 2010, 2011, 2012, 2013 and 2014, whether the refunds will be sufficient cannot be determined until the end of the plan term.

## FACTS AND BACKGROUND

Debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Code on April 30, 2010. Their plan was confirmed on July 22, 2010. The Firm's billings statements reflect total fees incurred in the amount of $8,397.00, fee adjustments in the amount of $850.00, and total fees billed in the amount of $7,547.00. The fees adjustments resulted from the Law Firm reducing Mr. Davis' hourly rate for the case from $250.00 to $200.00, and Ms. Steiling's hourly rate for the case from $175.00 to $150.00.

Andrea Steiling handled most of the work for the Debtors in connection with this case performed by an attorney, having billed 28.6 of the 36.7 hours of attorney time billed to the Debtors. Paralegals in the Law Firm billed 22.7 hours in connection with the case. Ms. Steiling started working at the Law Firm in May of 2009, where she began by doing initial client consultations, progressed to handling Chapter 7 cases, then Chapter 13 cases, and now she has been assisting with work on some Chapter 11 cases. Since 2009, she has handled a total of 127 chapter 7 cases for which she had full responsibility for about ninety percent of the work. She has also filed fifteen Chapter 13 cases for which she testified she is responsible for nearly ninety-eight percent of the work.

The Schedules filed of record reflect assets valued at $229,320.00, tax debt of about $6,000.00, and non-priority unsecured claims totaling $123,372.20. Schedule A lists one property, the Debtors' former residence. Schedule D lists three secured creditors consisting of creditors holding first and second mortgages against the Debtors' former residence and a car loan. Schedule E lists two tax debts. Schedule F lists twenty-three (23) non-priority unsecured claims totaling $123,372.20. Schedule G lists one executory rental agreement and one cell phone contract. Schedule H does not list any co-debtors. Schedules I and J reflect monthly

income after payroll deductions of $6,252.54 and monthly expenses of $7,127.11. Form B22C filed upon commencement of the case reflects currently monthly income on Line 11 of $9,250.63, a household size of five on Line 16, and negative monthly disposable income under 11 U.S.C. § 1325(b)(2) on Line 59 of ($342.95). Schedule I reflects that one of the household members is age 68. Amended Form B22C filed July 19, 2010 reflects currently monthly income on Line 11 of $9,250.63, a household size of four on Line 16, and negative monthly disposable income under 11 U.S.C. § 1325(b)(2) on Line 59 of ($142.24).

An order was entered July 22, 2010 confirming the chapter 13 plan filed on the petition date. Both the plan and the order confirming the plan provide for monthly payments under the plan in the amount of $170.00 for a period of 60 months. The chapter 13 trustee and the New Mexico Department of Taxation and Revenue filed objections to the plan.

In connection with the Weavers' bankruptcy case, Ms. Steiling testified that initially there was some question as to whether the Weavers might be able to obtain a discharge in a Chapter 7 bankruptcy case, but that based on their income level they decided to file a Chapter 13 case. Ms. Steiling also testified that there was an issue as to whether Mrs. Weaver's father should be included in the household size for purposes of completing the Form B22C, and, if so, whether his social security income must also be included. After conducting legal research, she concluded, based on the majority of the case law she found, that such income must be included if the parent is included in the household size.

The Debtors filed a motion to assume an executory contract (a cell phone contract) and a motion to assume an unexpired lease (a rental agreement), which were granted without objection. Ms. Steiling resolved the objections to the Debtors' plan filed by the Chapter 13 Trustee and the State of New Mexico Taxation Department. Ms. Steiling had to amend the Debtors' Schedule C

to correct the applicable exemption scheme, having initially elected the exemption scheme under 11 U.S.C. § 522(d) for debtors ineligible to claim those exemptions,[2] and to claim exemptions under Nevada law. Ultimately, the Weavers surrendered their home and confirmed their plan, which allowed them to pay their tax claims through the plan and discharge a significant amount of unsecured debt. After payment of taxes, attorneys' fees and trustee's fees, little, if any, of the plan payments will be available to pay holders of non-priority, unsecured claims.

Gerald Velarde testified at the final hearing as an expert in the area of Chapter 13 practice generally. He was not qualified as an expert to testify on the range of fees typically charged in Chapter 13 cases in this district generally, nor the basis for that range of fees. Mr. Velarde testified that his fees charged in connection with Chapter 13 cases average between $3,000.00 and $3,200.00, and that overall his fees for representing Chapter 13 debtors range from $1,900.00 at the low end of the spectrum for a simple Chapter 13 case and up to $7,500.00 or more for a more complex Chapter 13 case. After reviewing the docket in this proceeding, Mr. Velarde observed that the two complicating issues in this case were the issue of whether to include Ms. Weaver's father in the household, and which exemption scheme should be selected. In his opinion, based on his assessment of the complexity of the case, Mr. Velarde testified that he would have likely charged between $3,500.00 and $3,600.00 to represent the Weavers in this Chapter 13 case. Mr. Velarde's assessment of the complexity of the case was based solely on his review of the documents filed of record.

The Retainer Agreement with the Law Firm attached as Exhibit A to the Fee Application identifies a standard, anticipated fee of $3,000.00 for a simple Chapter 13 proceeding, including filing fee, taxes, and other costs. *See* Exhibit 1. The pre-printed estimate of $3,000.00 was

---

[2] Based on the Debtors' place of domicile within the 730-day period prior to commence of the bankruptcy case, Nevada exemption laws apply. Nevada is an "opt out" state, meaning that if Nevada exemption laws apply, exemptions set forth in 11 U.S.C. § 522(d) are not available to the debtor.

-4-

crossed out in this case and $2,000.00 was written in. *Id.* The Weavers paid the Law Firm a retainer of $2,500.00.

## DISCUSSION

Attorneys representing debtors in a Chapter 13 case are entitled to:

> reasonable compensation . . . for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.
>
> 11 U.S.C. § 330(a)(4)(B).

The other factors set forth in 11 U.S.C. § 330(a)(3) are:

(A) the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of a case under this title;
(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

The party requesting compensation from the estate bears the burden of demonstrating that the requested fees are reasonable.[3] Generally when, as in this district, the Court has not approved a "no look" fee, the starting point for determining the reasonableness of requested fees charged by attorneys representing debtors in bankruptcy cases is the lodestar method.[4] Under the lodestar

---

[3] *See In re Recycling Indus., Inc.* 243 B.R. 396, 403 (Bankr.D.Colo. 2000)(stating that "[i]t is well settled that the burden of proof as to the reasonableness of compensation is on the fee applicant.")(citing *In re Narragansett Clothing Co.,* 210 B.R. 493, 497 (1st Cir. BAP 1997)(remaining citation omitted).

[4] *See, Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)(stating that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."); *In re Miniscribe, Corp.,* 309 F.3d 1234, 1244 (10th Cir. 2002)(noting that the Tenth Circuit "has long applied the . . . lodestar factors to assess 'reasonableness' of attorneys' fees in a variety of contexts . . . and has also specifically determined that the test applies to attorney fee determinations under §330(a)(1)" and adopting the lodestar method as the appropriate measure for calculating

-5-

Case 10-12204-j13    Doc 60    Filed 03/11/11    Entered 03/11/11 16:42:59 Page 5 of 15

method, the fee is determined by multiplying the reasonable number of hours expended by the reasonable hourly rate.[5]

Assessing the Reasonableness of the Requested Hourly Rates

In assessing the reasonableness of the requested hourly rates, 11 U.S.C. § 330(a)(3)(F) directs the Court to consider the customary rates charged in the market place for similarly skilled attorneys who practice outside the area of bankruptcy.[6] No evidence was presented as to the range of hourly rates charged by comparably skilled attorneys who practice in areas other than bankruptcy. But the Court is not restricted to this criterion or required to rely solely on evidence presented at the hearing in assessing the reasonableness of the requested hourly rates.[7] The Court has discretion to determine a reasonable hourly rate and can rely on its own experience and knowledge of customary hourly rates in deciding a reasonable hourly rate.[8]

---

reasonable compensation for a chapter 7 trustee). *See also, In re Yates,* 217 B.R. 296, 299 (Bankr.N.D.Okla. 1998)(noting in the context of an application for approval of a flat fee in by a Chapter 13 debtor's attorney, that "[a]s a general rule in bankruptcy cases, the lodestar method, namely the number of hours expended times customary hourly rate, is used to determine attorney fees.")(citation omitted). *But cf. In re Howell,* 226 B.R. 279, 281 (Bankr.M.D.Fla. 1998)(stating that "[r]outine Chapter 13 cases are not appropriate cases for the use of the lodestar method. Instead, they are much more susceptible to a standard rate or flat, fixed rate approach, based on all the relevant legal factors.").

[5]*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)(stating that the lodestar figure is "the product of reasonable hours times a reasonable rate"); *In re Reconversion Technologies, Inc.,* 216 B.R. 46, 52 (Bankr.N.D.Okla. 1997)(explaining generally that under the "lodestar" method, the "number of hours expended times a reasonable hourly rate, is used to determine attorney fees" such that "[t]he 'total number of hours reasonably worked on the case' is 'multiplie[d] ... by the reasonable hourly rate' ")(citing *In re Cent. Metal Fabrication, Inc.,* 207 B.R. 742, 748 (Bankr.N.D.Fla. 1997( and quoting *In re Cascade Oil Co.,* 126 B.R. 99, 103 (K.Kan. 1991)). *See also, In re Boddy,* 950 F.2d 334, 337 (6th Cir. 1991)(stating that the lodestar calculation is determined by "multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended.")(internal quotation marks and citation omitted).

[6] Section 330(a)(3)(F) provides, in relevant part:
    In determining the amount of reasonable compensation to be awarded . . . the court shall consider . . .
        (F) whether the compensation is reasonable based on the customary compensation charged by
        comparably skilled practitioners in cases other than cases under this title.
11 U.S.C. §330(a)(3)(F).

[7]*See In re Roffle,* 216 B.R. 290, 293 (Bankr.D.Colo. 1998)(acknowledging that "the Court does look to the market place to ascertain whether the rates charged are reasonable for comparably skilled attorneys outside the bankruptcy arena" but that the comparable rates of non-bankruptcy attorneys is not the "*sole* criteria" the Court can consider, given the mandate in § 330(a)(3) to consider other factors "including the benefit and necessity of services to the debtor.")

[8] *See Smith v. Freeman,* 921 F.2d 1120, (noting that "[t]he establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area" (citation

-6-

The Chapter 13 Trustee objected to the hourly rate of $150.00 charged by Jonathan Peake, an associate at the Law Firm. The Fee Application reflects that $150.00 is the lowest hourly rate charged by an attorney at the Law Firm who worked on the Debtors' bankruptcy case. The Court finds that the hourly rate of $150.00 for work performed by Jonathan Peake is reasonable. Andrea Steiling, the attorney who performed the majority of the work on this case, reduced her normal hourly rate from $175.00 to $150.00. Similarly, William Davis, whose customary hourly rate for work performed on behalf of debtors is $250.00, reduced his rate to $200.00 in this case. The Court finds that these reduced hourly rates are reasonable.

<u>Assessing the Reasonableness of the Number of Hours Expended in this Case</u>

Attorneys are required to exercise billing judgment in reviewing time entries, and to make billing adjustments when warranted.[9] "Not every hour or part of an hour spent by an attorney is 'billable' and it is incumbent on the attorney to exercise 'billing judgment' when submitting [fee] applications to the court." *In re Stromgberg,* 161 B.R. 510, 517 (Bankr.D.Colo. 1993). "Generally, holding an intra-office conference for the purpose of training attorneys is not compensable." *In re New Boston Coke Corp.,* 299 B.R. 432, 445 (Bankr.E.D.Mich. 2003)(citing *In re Big Rivers Elec. Corp.,* 233 B.R. 768, 780 (Bankr.W.D.Ky. 1999), *rev'd on other grounds,* 252 B.R. 393 (W.D.Ky. 2000)("[w]hile training . . . associates and new professionals are necessary functions, the costs associated therewith are [overhead] expenses to the firm.").

---

and internal quotation marks omitted) and that "[a] district judge can 'turn to her own knowledge' to supplement the evidence.")(quoting *Bee v. Greaves,* 910 F.2d 686, 689 n.4. (10th Cir. 1990)); *In re Recycling Industries, Inc.,* 243 B.R. 396, 404 n. 6 (Bankr.D.Colo. 2000)(noting that when there is no evidence of prevailing market rates, the court "may use other relevant factors, including its own knowledge, to establish the rate.")(citation omitted); *In re Lady Baltimore Foods, Inc.,* 2004 WL 2192365 (Bankr.D.Kan. January 27, 2004)(unreported)(stating that the Court "may also use its own knowledge and experience in determining reasonableness").

[9] *See In re Colorado-Ute Elec. Ass'n, Inc.,* 132 B.R. 174, 177 (Bankr.D.Colo. 1991)("In applying for fees, attorneys 'should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.'")(quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939-1940, 76 L.Ed.2d 40 (1983)); *In re Jensen-Farley Pictures, Inc.*, 47 B.R. 557, 583 (Bankr. D. Utah 1985)(law firms are expected to make billing adjustments to exclude time for unproductive efforts).

Further, the Court remains obligated to scrutinize the time records to evaluate the propriety of an attorney's requested compensation, even when no objection is filed.[10] And while the Court need not slavishly critique each individual time entry in order to assess reasonableness,[11] the Court cannot make a conclusory determination that a fee is reasonable or unreasonable, but must articulate specific reasons for its determination and show its calculation.[12] The Court's duty to assess the reasonableness of the overall fees charged is particularly critical in Chapter 13 cases, where the debtors generally have little or no incentive to keep fees low if holders of non-priority unsecured claims will be paid less than in full.[13] Debtors have little or no incentive to keep fees low when, as here, the Debtors' attorneys' fees are paid through the plan and the plan payments will remain the same regardless of the amount of allowed fees. The Court may draw on its own experience with attorney charges in bankruptcy cases in this district to determine a reasonable fee.[14]

---

[10] *See, In re Tahah,* 330 B.R. 777, 780-81 (10th Cir. BAP 2005)(stating that "bankruptcy courts have a duty to independently evaluate the propriety for the compensation requested under §330."); *In re Cascade Oil Co., Inc.,* 126 B.R. 99, 106 (D.Kan. 1991)(stating that "[i]n the absence of objections to the fee applications, the court still has the independent judicial duty to determine whether compensation is reasonable.")(citations omitted).

[11] *See Tahah,* 330 B.R. at 781 (acknowledging that "the analysis under §330 does not require a detailed review and discussion of the line by line entries.").

[12] *See In re Cain,* 356 B.R. 787 (10th Cir. BAP 2007)(unreported)(stating that "[t]he court's order on attorney's fees must allow meaningful review and it must articulate the decisions it made, give principled reasons for those decisions, and show its calculation.")(citing *Adams v. Mathis,* 752 B.R. 553, 554 (11th Cir. 1985)). *See also, Cascade Oil,* 126 B.R. at 107 (noting that "[a] conclusory statement on whether a fee is reasonable or unreasonable is generally not sufficient.")(citation omitted).

[13] *See Stromberg,* 161 B.R. at 517 (noting that, "because of the peculiarities of Chapter13, court scrutiny of Chapter 13 fee applications . . . is critical" especially since "[t]he debtors in Chapter 13 Cases really have no interest in exerting any control or objecting to their attorneys' fees charged.")(citation omitted).

[14] *See In re Pryor,* 2007 WL 1073884, *1 (Bankr. D.Md. Feb. 8, 2007)(reducing the allowed fees for chapter 13 debtor's counsel in reliance on the court's "own experience in examining literally thousands of cases that pass through the bankruptcy process"); *In re Burton*, 278 B.R. 645, 649-50 (Bankr. M.D.Ga. 2001) (stating, in connection with evaluation of attorneys' fees in a Chapter 13 case that "[t]he court may draw on its own experience with the present case and similar cases to determine a reasonable fee.")(citing *Citibank, N.A. v. Multiponics, Inc. (In re Multiponics, Inc.),* 622 F.2d 731 (5th Cir. 1980)). *See also, In re Spillane*, 884 F.2d 642, 647 (1st Cir. 1989)(affirming district court's reduction in approved hourly rate that was based on the district court's own experience); *In re Hammeken*, 2010 WL 2940801, *1 (Bankr. D.Ariz. July 21, 2010) (stating that "the court employs its own experience, both as an attorney and as a judge, to attorney fee applications.").

Electronic Filing of Documents is Noncompensable Clerical Work

Clerical tasks are generally not compensable from the bankruptcy estate, even if such tasks are performed by paralegals or attorneys.[15] Such tasks are considered part of office overhead.[16] The Fee Application reflects time charged for filing documents electronically through the Court's CM/ECF system, and for time for electronically transmitting proposed orders to the Court for consideration. The Law Firm argued that filing electronically is not equivalent to hand-delivering documents to the clerk's office for filing, and that, because electronic filing requires selecting the proper document to file, navigating through the CM/ECF interface and preparing a docket entry, it is appropriate to bill for such work. This Court disagrees. Even though some training in using the Court's CM/ECF system is required, filing a document electronically is not a billable task, whether performed by the attorney or performed by a non-attorney under the direction and permission of the attorney with a CM/ECF account. It is the type of cost that should be absorbed in a legal firm's office overhead. Further, unless some explanation to the Court is required in connection with electronically transmitting proposed orders for entry, the task is clerical and not separately compensable. No evidence was presented relating to the submission of orders for entry. Accordingly, the time the Law Firm charged for

---

[15] *See In re CF & I Fabricators of Utah, Inc.,* 131 B.R. 474, 489 (Bankr.D.Utah. 1991)(stating that "[i]f clerical or secretarial services shift to the paraprofessional, the service is overhead and not a reasonable charge to the estate."); *In re Lorenzen*, 2010 WL 5524696, *1 (Bankr. N.D.Ill.2010) ("The court disallows the compensation of clerical or stenographic employees of the professional for the performance of routine clerical or administrative activities in the normal course of the professional's business, such as photocopying, secretarial work, or routine filing.").

[16] *See CF & I Fabricators,* 131 B.R. at 490, n. 16 (noting that when considering whether time billed by a paralegal is compensable, the Court should consider "whether payment for the service is included in overhead [as part of] . . . the rate charged to the estate by the professional."). *Accord Narragansett Clothing,* 210 B.R. at 499 (overhead such as clerical and secretarial duties is not compensable); *In re Wheeler*, 439 B.R. 107, 110 (Bankr. E.D.Mich. 2010)("Clerical services should not be billed separately to clients, but should be included in the office overhead")(citation omitted); *In re Guzman*, 2009 WL 607401 (Bankr. D.N.M. March 5, 2009)("Tasks that are purely secretarial or clerical in nature are not compensable from the bankruptcy estate and are considered part of office overhead.")(citation omitted).

filing documents through the Court's CM/ECF system and for the electronic submission of orders for entry in the amount of $160.00 will be disallowed.

### Fees That Exceed a Reasonable Charge for Services Rendered Should Be Disallowed

Overall, there is nothing in the Fee Application nor in the docket in the Debtors' bankruptcy case to indicate that this case was particularly complex. The Debtors scheduled one parcel of real estate, their former residence, two mortgages against the residence and a lien on a vehicle, personal property with an aggregate value of $27,135.69, priority tax debt in the amount of $5,991.13 and non-priority unsecured claims totaling $123,372.20. The chapter 13 plan proposed on the petition date was confirmed. The plan objections filed by the Chapter 13 Trustee and the New Mexico Department of Taxation and Revenue were of a type that is not out of the ordinary in chapter 13 cases.

The two issues in the case that the Law Firm identified in particular in support of its Fee Application concerned the applicable household size for purposes of determining disposable income under the means test if the income of a parent is excluded and the need to claim exemptions under Nevada law. Whether a debtor can exclude all income of a parent who resides with the debtor for purposes of calculating current monthly income but include the parent in the household size for purposes of claiming expense deductions when calculating disposable income under the means test is not a particularly difficult issue.[17] If it is unclear whether an extended family member may or must be included in the household size, charging for alternative B22C calculations is appropriate. Further, analyzing the need to claim exemptions pursuant to 11

---

[17] *See* 11 U.S.C. §101(10A)(B)(providing that "any amount paid . . . on a regular basis for the household expenses of the debtor or the debtor's dependents" is included in "current monthly income."); *In re Hays,* 2008 WL 1924233, *2 (Bankr.D.Kan. 2008)(reasoning that "[i]f Debtors intend to claim this daughter as a dependent on the expense side of the means test equation, which would be to their benefit, they will also be required to acknowledge that she is a dependent on the income side of the equation, as well.")(citation omitted).

-10-

U.S.C. § 522(b)(3)(A)[18] under the laws of a foreign state that has opted out of the exemption scheme set forth in 11 U.S.C.§ 522(d), although not typical in most chapter 13 case, is not complex.

Preparing Form-Like Documents

Chapter 13 practice is generally "form" based, so that a firm that regularly represents Chapter13 debtors develops forms that can be used for routine motions, such as motions to value collateral and motions to assume executory contracts. In fact, sample Chapter 13 forms are posted on the Court's website for use in connection with Chapter 13 practice. The Law firm filed one motion to assume an executory contract, and one motion to assume an unexpired lease in the case. These motions were three pages each, including the signature block and mailing list, and appear to be form-like documents. *See* Docket Nos. 14 and 15. The motions were granted without objection, and the orders the Law Firm prepared granting the motions appear to be simple, form-based documents. *See* Docket Nos. 21 and 22. The Law Firm billed $300.00 for drafting the motions and orders. The Court finds that this amount is excessive and will disallow $120.00 of the amount charged for the preparation of these documents.

Charges for Preparation of the Petition, Schedules,
Statement of Financial Affairs, Form B22C

The Billing Statements reflect that in April 2010 the Law Firm prepared the initial papers for filing in the bankruptcy case, including the Petition, Schedules, Statement of Financial

---

[18] Section 522(b)(3)(A) provides:
subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located at a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place;

11 U.S.C. § 522(b)(3)(A).

-11-

Affairs, Form B22C and Statement of Social Security Number and Statement of Intention. For this work, exclusive of time communicating with the client and any intra-office conferences, the Law Firm charged $1,306.00 including (a) 7.1 hours of time billed for services of a legal assistant to prepare the first draft of the Petition, Schedules and Statement of Financial Affairs and 1.2 hours to make revisions; (b) 2.3 hours of legal assistant time to prepare the Form B22C, (c) 0.80 hours of legal assistant time to prepare a Statement of Social Security Number, Statement of Intention, and Declaration; and (d) $250.00 of attorney time to review the package of documents prior to filing. Taking into account the information disclosed in the Schedules, Statement of Financial Affairs, and Form B22C, including nature of the debtors' assets and liabilities and their income and expenses, the Court will disallow as excessive $500.00 of the amount charged for preparation of these documents. The Court is not disallowing any of the time the Law Firm charged for meeting or otherwise communicating with its clients in connection with this work.

<u>Charges for Amending Form B22C, Claiming Exemptions</u>
<u>Under Nevada Law and for Intra-Office Conferences</u>

The time reflected in the Fee Application for researching certain issues and for discussing the case with the senior attorney also appears to be excessive. When a less-experienced attorney researches areas of law in which a more experienced attorney would already be well-versed, and when supervision is required as part of the training process, billing judgment requires a reduction in time charged.[19] The Law Firm already made a billing adjustment in recognition of these

---

[19] *Cf. In re Associated Grocers of Colorado, Inc.,* 137 B.R. 413, 422 (Bankr.D.Colo. 1990)(finding it improper to delegate research of sophisticated bankruptcy issues to attorneys inexperienced in bankruptcy law without any corresponding reduction in the time billed); *In re Grayhall Resources, Inc.,* 1990 WL 314011, *11 (Bankr.D.Colo. March 21, 1990)(unreported)(observing that less experienced attorneys "must spend significant hours in research on matters which would be second nature to experienced counsel[ ]" and that it is a failure in billing judgment to seek compensation from the estate "the time spent in educating the associates.").

-12-

factors by reducing the hourly rate for Ms. Steiling in this case from $175.00 to $150.00. However, the Court finds that a further adjustment is required.

The Firm charged $1,500.00 to research whether the Debtor's fathers' social security income must be included in the calculation of disposable income if he is included in the household size, to amend Form B22C to exclude the father from the household size, and to communicate with the Debtors regarding the same. The Court finds that such charges exceed the amount of a reasonable charge by $750.00, and therefore will disallow that amount.

The Law Firm charged $270.00 to research Nevada exemption law and amend schedule C to claim exemptions under Nevada law. The Court finds that such charges exceed the amount of a reasonable charge by $70.00, and therefore will disallow that amount.

The Law Firm charged $686.50 for intra-office conferences, of which $620.00 was charged for meetings between Mr. Davis and Ms. Steiling. Meetings between lawyers in a law firm in the representation of a client can be necessary and appropriate for a variety of reasons, such as to develop strategy, formulate judgments on matters, coordinate efforts, and delegate work. Given the nature and complexity of this chapter 13 case, however, the Court finds that the amount charged for intra-office conferences exceeds a reasonable fee by $300.00 and therefore will disallow that amount.

<u>Other Charges</u>

The Court has determined that certain other charges exceed a reasonable charge for tasks performed, as follows:

| Date | Task | Time Spent | Amount Charged | Amount Disallowed |
|---|---|---|---|---|
| 05/12/10 | Prepare Certificate of Pay Advices (SD) | 0.50 | 47.50 | $19.00 |
| Various | Review Plan Objections filed by the Trustee and Taxation | 1.20 | 180.00 | $120.00 |

| | and Revenue (ADS) | | | |
|---|---|---|---|---|
| 07/23/10 to 07/28/10 | Preparation of Fee Application (ADS, DK, SD) | 3.10 | 366.00 | $91.00 |

The amount allowed for preparation of the Fee Application takes into account the greater detail it contains as compared with fee applications typically filed in chapter 13 cases in this district seeking approval of a lesser amount of attorneys' fees.

Summary of Disallowed Charges

In summary, the total amount for disallowed fees consists of:

| | |
|---|---|
| Fees for filing documents electronically on CM/ECF and for electronic submission of orders to the Court | $160.00 |
| Fees for preparing schedules and other first day papers | $500.00 |
| Fees for preparing motions to assume leases and executory contracts and corresponding orders | $120.00 |
| Fees for conducting legal research relating to household size and amending Form B22C | $750.00 |
| Fees for researching applicable exemption law and amending Schedule C | $70.00 |
| Fees for Intra-Office conferences | $300.00 |
| Other fees | $220.00 |

TOTAL DISALLOWED AMOUNT:    $2,120.00

In assessing the reasonableness of the requested fees, the Court recognizes that certain factors, such as the number and length of client meetings necessary to gather information and to keep the client informed, the demanding nature of certain clients, and the relative completeness of a client's records can affect the amount of time it takes to perform necessary tasks. But when the Court determines that excessive fees were charged in light of the degree of complexity of the issues presented, a downward adjustment in the allowed fees is necessary. Based on the foregoing, the Court determines that $2,120.00 of the requested fees must be disallowed because

-14-

they are not reasonable or necessary. An order consistent with this Memorandum Opinion will be entered.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: March 11, 2011

COPY TO:

William F. Davis
Andrea Steiling
Attorneys for Debtors
6709 Academy NE, Suite A
Albuquerque, NM 87109

Kelley L. Skehen
Chapter 13 Trustee
625 Silver Ave. SW, Suite 350
Albuquerque, NM 87102